UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULA ZAJONC,<br><br>    Plaintiff,<br><br>v.<br><br>T-MOBILE US, INC.,<br><br>    Defendant. | Case No. 3:25-cv-02860-JSC<br><br>**ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 20 |

Paula Zajonc filed this putative class action in Alameda County Superior Court challenging Defendant T-Mobile's denial of a religious exemption to its Covid-19 vaccine requirement. Plaintiff brings claims under the Fair Employment and Housing Act (FEHA) and California's Unfair Competition Law (UCL), Cal. Bus. & Professions Code § 17200. Defendant removed the action to this Court based on diversity jurisdiction and the Court granted Defendant's motion to dismiss the complaint for failure to state a claim. (Dkt. No. 17.[1]) Defendant's motion to dismiss Plaintiff's First Amended Complaint is now pending before the Court. (Dkt. No. 20.) Having reviewed the parties' briefs and having had the benefit of oral argument on August 21, 2025, the Court GRANTS the motion to dismiss.

**DISCUSSION**

Defendant again moves to dismiss Plaintiff's FEHA and UCL claims for failure to state a claim.[2] Because Plaintiff's FAC still does not plausibly allege a claim, the motion to dismiss is granted.

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.
[2] Plaintiff did not challenge Defendant's motion to dismiss her wrongful termination claim and did not plead this claim on amendment.

### A. FEHA Religious Discrimination Claim

To state a claim for religious discrimination under Title VII or FEHA "a plaintiff must allege, among other things, that she holds 'a bona fide religious belief' that conflicts with an employment requirement." *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023) (quoting *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993) (Title VII); *Friedman v. S. Cal. Permanente Med. Grp.*, 102 Cal.App.4th 39, 45 (2002) (FEHA)). The Court previously dismissed this claim because Plaintiff's perfunctory allegations failed to state a claim. (Dkt. No. 17 at 2.) Plaintiff's FAC suffers from the same pleading deficiency. The FAC alleges:

> Plaintiff had bona fide religious beliefs which prevented her from taking the Covid vaccine. Indeed, in support of Plaintiff's exemption request, she attached a letter from the Pastor of her church, of which Plaintiff was a disciple, which outlined the religious reasons for Plaintiff's refusal to take the Covid-19 vaccine.

(Dkt. No. 19 at ¶ 8.) Plaintiff still does not allege facts that plausibly support an inference she had a bona fide religious belief which prevented her from taking the Covid vaccine. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff argues numerous appellate courts have reversed dismissal orders in Covid exemption cases which reflects a "growing consensus that such claims can and should proceed to discovery." (Dkt. No. 23 at 7-8 (citing *Sturgill v. Am. Red Cross*, 114 F.4th 803, 807-812 (6th Cir. 2024); *Bazinet v. Beth Israel Lahey Health, Inc.* 113 F.4th 9, 16-17 (1st Cir. 2024); *Passarella v. Aspirus, Inc.* 108 F.4th 1005, 1010-1012 (7th Cir. 2024); *Bube v. Aspirus Hosp., Inc.* 108 F.4th 1017, 1019-1020 (7th Cir. 2024); *Lucky v. Landmark Medical of Mich., P.C.* 103 F.4th 1241, 1243-1244 (6th Cir. 2024); *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 900-901 (8th Cir. 2024).) But these case merely highlight the insufficiency of Plaintiff's pleading. In each the plaintiff alleged facts supporting an inference of a sincerely held religious belief, not just the bare conclusion that the plaintiff had such a belief. *See*, *e.g.*, *Sturgill*, 114 F.4th at 806 ("Sturgill sent a detailed letter to the Red Cross seeking a religious exemption" which "informed the Red Cross that her 'sincerely held religious belief for [her] accommodation stems from the biblical teaching

2

of [her] religious spiritual leader Jesus Christ,'" and the letter "quoted several different scriptures [] supporting her belief that she is the 'steward[ ] of God's blessing of life' and thus was required to 'tak[e] the utmost care for [her] body ... to continue to honor God and the temple he gave [her].'"); *Bazinet*, 113 F.4th at 16 ("Bazinet explained her religious objection to being vaccinated" including "that presently available COVID-19 vaccines were developed using fetal cell lines that originated from aborted fetuses" such "that taking the vaccine would make her complicit in the performance of abortions which would be 'an aberration to [her] Christian faith'" and "provided numerous quotations from religious sources that she says support her view."); *Passarella*, 108 F.4th at 1007 ("Invoking and quoting passages from the Bible, Passarella explained her Christian belief that her body 'is [the Lord's] dwelling place'" and stated "'[a]fter prayerful consideration, I don't feel at peace about receiving the COVID vaccine' and instead 'must trust God with my body (His temple) and that he will provide for me and protect me as he has already proven time and time again during my life.'"); *Bube*, 108 F.4th at 1019 ("Bube informed Aspirus in her initial request that she is a 'baptized and a practicing Catholic'" and when her initial request was denied she "further explained that she tries to 'eat healthy' and 'remain active' to 'keep my God-given mind, body, and soul healthy.'"); *Lucky*, 103 F.4th at 1242 ("Lucky is a non-denominational Christian who believes that she 'should not have any vaccination enter her body such that her body would be defiled, because her body is a temple'" and she "'prayed to God specifically about the COVID-19 vaccine' and says that God told her 'that she would suffer spiritual harm if she received the COVID-19 vaccine.'"); *Ringhofer*, 102 F.4th at 901 ("religious beliefs prevent her from putting into her body the Covid-19 vaccines" explaining "because they were all produced with or tested with cells from aborted human babies. Receiving the vaccine would make her a participant in the abortion that killed the unborn baby.").

Plaintiff's reliance on *Peterson v. Wilmur Commc'ns, Inc.*, 205 F. Supp. 2d 1014, 1018 (E.D. Wis. 2002), for the proposition "courts must give 'great weight' to the plaintiff's own characterization of his or her beliefs as religious" misses the point. The issue there was not whether the plaintiff had adequately described his belief, but rather, whether the plaintiff's beliefs in Creativity, the central tenet of which is white supremacy, amounted to a religious belief. *Id*. at

1021-22. Here, in contrast, Plaintiff alleges no facts regarding her beliefs and why they conflicted with the vaccination requirement. The FAC references a letter Plaintiff's pastor sent "outlin[g] the religious reasons for her refusal," but neither identifies those reasons nor attaches the letter. (Dkt. No. 19 at 8.) "[C]ourts [are not required to] take plaintiffs' conclusory assertions of violations of their religious beliefs at face value." *Bolden-Hardge*, 63 F.4th at 1223 (stating the plaintiff bears the burden to allege a conflict with religious beliefs).

Plaintiff also has not plausibly alleged she was terminated because of her religious beliefs. Rather, she alleges Defendant initially approved her request, but then later "refused to allow any accommodations, resulting in the termination of Plaintiff's employment." (FAC at ¶ 10.) These conclusory allegations, which do not even allege when she was terminated, are insufficient. *Iqbal*, 556 U.S. at 678.

Defendant's motion to dismiss Plaintiff's FEHA claim is again granted.

### B.   UCL Claim

The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code, § 17200. The statute is written in the "disjunctive" and establishes three varieties of unfair competition, with each as a basis for liability. *Cel-Tech Comm'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation omitted). Because the UCL provides only for equitable remedies, plaintiffs bringing a UCL claim in a federal court must establish that they "lack[ ] an adequate remedy at law" before the court can award them the UCL's equitable relief. *Sonner v. Premium Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

#### 1.   Adequate Remedy at Law

Federal courts cannot "award[ ] equitable relief when an adequate legal remedy exists." *Sonner*, 971 F.3d at 842; *see also Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945) ("Equitable relief in a federal court is of course subject to restrictions," including that "the suit must be within the traditional scope of equity" and "a plain, adequate and complete remedy at law must be wanting."). So, Plaintiff "must establish that [she] lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL" in federal court. *Sonner*, 971 F.3d at

4

1  844. If Plaintiff has a "viable" legal "damages claim," then she cannot pursue an equitable claim
2  under the UCL for the same alleged harm. *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir.
3  2022), cert. denied sub nom. *Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612 (2023).
4      Plaintiff contends her UCL claim seeks prospective injunctive relief, not damages, so it
5  cannot be dismissed under *Sonner*. *See Graham v. Cent. Garden & Pet Co.,* No. 22-CV-06507-
6  JSC, 2023 WL 2744391, at *4 (N.D. Cal. Mar. 30, 2023) (holding monetary damages are not
7  adequate legal remedy for prospective injunctive relief). In particular, she seeks an order
8  "enjoining T-Mobile from wrongfully terminating its employees for failing to take the Covid-19
9  vaccine, in violation of their religious right, for which she has no adequate remedy at law." (Dkt.
10 No. 23 at 13.) T-Mobile counters that Plaintiff does not have Article III standing to obtain
11 injunctive relief. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[P]laintiffs must
12 demonstrate standing for each claim that they press and for each form of relief that they seek (for
13 example, injunctive relief and damages)[.]"). To establish a right to forward-looking relief,
14 Plaintiff must demonstrate that she faces "a substantial risk of future injury." *Murthy v. Missouri*,
15 603 U.S. 43, 69 (2024). As Plaintiff has not alleged T-Mobile in fact has a policy of terminating
16 employees for failing to take the Covid vaccine or that she, a former employee, faces a substantial
17 risk of future injury, her UCL claim for injunctive relief fails for lack of Article III standing.
18     Plaintiff's suggestion at oral argument that she was seeking restitution is unavailing.
19 *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) ("In order to entertain a
20 request for equitable relief, a district court must have equitable jurisdiction, which can only exist
21 under federal common law if the plaintiff has no adequate legal remedy."). Plaintiff's FEHA
22 claim seeks damages, and thus, provides an adequate remedy at law.

### 2. Failure to State a Claim

24     Even if Plaintiff had adequately alleged standing to pursue injunctive relief, her UCL claim
25 fails to state a claim.
26     First, as before, Plaintiff's "unlawful" claim is predicated on the FEHA violation and thus
27 must be dismissed for the same reason as the FEHA claim. *See Aleksick v. 7-Eleven, Inc.*, 205
28 Cal.App.4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also

fails"). Second, Plaintiff has not alleged any additional facts in support of her claim under the unfair prong; so, the claim under this prong is dismissed for the reasons previously stated. (Dkt. No. 17 at 2-3.)  Third, although Plaintiff has added a sentence to her claim under the fraudulent prong alleging the "fraudulent conduct includes, but is not limited to, Plaintiff's manager, Erik Wetzel, stated on a November 1, 2021 document that Plaintiff's accommodation request was approved, only to revoke the approval," this addition is insufficient to state a claim under the unlawful prong. (Dkt. No. 19 at ¶ 34.)  "A business practice is fraudulent under the UCL if members of the public are likely to be deceived." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  Plaintiff insists the statement was false because T-Mobile rejected the request for an exemption under "a common policy," but she does not identify the policy. (Dkt. No. 23 at 14-15 (citing FAC at ¶ 9.)   Plaintiff's allegation that Defendant initially granted her an exemption, but later denied it, does not support an inference Defendant had a deceptive business practice likely to mislead members of the public. *See Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1256–57 (2009).

Accordingly, Plaintiff's UCL claim is dismissed for lack of Article III standing and failure to state a claim.

### C. Leave to Amend

Federal Rule of Civil Procedure 15(a) provides leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003). Defendant urges the Court to deny leave to amend because Plaintiff has already amended the complaint and failed to cure the deficiencies.  Plaintiff requests leave to amend if the Court dismisses again arguing she should be given another chance as Defendant does not contend her claim is barred as a matter of law.  (Dkt. No. 23 at 15.)  Because Plaintiff represented at oral argument that she could plead additional facts in support of her claims, the Court will give her one final opportunity to amend.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED.  Any amended complaint is due by September 11, 2025.

6

1    The Court sets an initial case management conference for October 29, 2025 at 2:00 p.m.
2  via videoconference.  A joint case management conference statement is due October 22, 2025.
3    This order Disposes of Docket No. 20.
4    **IT IS SO ORDERED.**
5  Dated: August 21, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge

7